IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In Re | Chapter 7 |
|---|---|
| OSCAR LEGGITT, | |
| Debtor. | Case No. 04-21511-PHX-SSC |
| | Adv. No. 05-241 |
| RAQUEL EWOLDT, | MEMORANDUM DECISION |
| Plaintiff, | (Opinion to Post) |
| vs. | |
| OSCAR LEGGITT, | |
| Defendants. | |

## **I. Preliminary Statement**

The Plaintiff, Raquel Ewoldt filed her complaint seeking to have certain debt excepted from discharge pursuant to Section 523 (a)(5) or (a)(15) on March 25, 2005. The Defendant, Oscar Leggitt, also the Debtor in this Chapter 7 proceeding, did not file an answer, but appeared at the June 14, 2005 status hearing held before this Court. The Court conducted various pre-trial proceedings in this Adversary Proceeding, and a trial was conducted on October 17, 2005. Thereafter this Court took the matter under advisement.

The Plaintiff is seeking to have a debt in the amount of $4,374.61, plus costs and interest accruing thereon until paid in full, deemed nondischargeable. At trial, the Plaintiff only

1

focused on Section 523(a)(15) as being the relevant section for this Court to consider. This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Bank.P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C.§§ 1334 and 157. (West 2005).

## **II. Discussion**

In September 2004, the Plaintiff was required, as a part of her pending domestic relations proceedings, to request a hearing before the State Court to determine whether the Debtor was in contempt of the State Court's orders or judgments. The parties were divorced in 2002, and the Divorce Decree required that the Debtor pay child support, unreimbursed medical expenses, and certain debt obligations of the marriage.[1] The hearing in September was to determine, <u>inter alia,</u> whether the Debtor was complying with this Decree. At the hearing, the State Court ordered that the Debtor pay the Plaintiff the sum of $4,374.61, representing the sum of $3,984.61 still due and owing by the Debtor to the Plaintiff for the unpaid debt obligations that the Debtor should have paid pursuant to the Divorce Decree, and the sum of $390 still due and owing to the Plaintiff for unreimbursed medical/dental expenses.[2] The State Court did not reflect to which creditor this latter obligation was owed. The Court also did not award any attorneys' fees or costs to the Plaintiff at that hearing.

The Plaintiff testified that the Debtor did not pay the debt obligations set forth in the State Court minute entry order. As a result, the creditor obtained a judgment against the Plaintiff and recorded the judgement against the Plaintiff's residence. The Plaintiff was required to settle with said creditor, paying the amount of $3,984.01, to have the lien removed from her

---

**1.** The parties did not provide the Court with the Divorce Decree, but the Minute Entry for the September 15, 2004 State Court hearing notes the various obligations of the parties, as set forth in the Divorce Decree. *See* Exhibit 7.

**2.** *See* Exhibit 7.

2

residence.

The Plaintiff is 34 years' old, has essentially a high school education, and is employed as a receptionist at a pediatrician's office. She is paid weekly, working 40 hours per week, at an hourly rate of $13.50. Her monthly gross wages are equal to $2340; and her net wages are in the amount of $1,900 per month. She has remarried, and she is a member of a household of 5.[3] Her current husband is a supervisor at a steel supply company. His gross wages are $700 per week, or gross monthly wages of $2,900. His net wages are $2,100 per month. Hence, the monthly net wages of the Plaintiff and her current husband are $4,000. The Plaintiff testified that her monthly mortgage payment is $1,400, that she traded in two vehicles for a 2005 Yukon, which requires a monthly payment of $700, and that she had utilities, food and other expenses which must be paid on a monthly basis. She testified that she and her husband have little, if any, funds left at the end of the month. The Plaintiff described her financial situation as requiring "some financial hardship" to pay their bills in a timely manner. She also stated that she owes her attorney $1,200 from the contempt proceedings conducted in the State Court, and she has been unable to make any payments on that obligation.[4] She conceded on cross examination that through refinancing of the mortgage on her residence, she was able to install a pool at her home.

The Debtor is a real estate agent, having transferred to Realty Executives as of the time of the trial, but having worked previously at First USA Realty for the year preceding the trial before this Court. At the time of the trial in October, he was also working as a delivery driver for Safeway Food Stores, having obtained his commercial license to drive. He had been

---

**3.** The family consists of the Plaintiff, her current husband, her two children from her marriage with the Debtor, and presumably her current husband's child.

**4.** The Plaintiff presented no documentation, such as a court order or minute entry order, to reflect this unpaid obligation.

3

previously devoting 50 percent of his time to each job.[5] He believed, however, that he would resign from his job at Safeway. Although he stated that he had not earned much money through real estate commissions in 2004, he conceded that 2005 had been a good year in the Phoenix real estate market. He estimated that in 2005 he had earned $28,000 to $32,000 in real estate commissions. He also conceded that although he earned less income in 2004, he was able to pay $3,380 in child support arrears to the Plaintiff in December 2004.[6] He also conceded that he was able to pay, from his income, the sum of $12,814.06 in child support arrearages and other debt obligations in 2005.

The Debtor testified that he only earned $1,033 per month in income when he filed his bankruptcy petition in September 2004.[7] However, the Court finds no basis for the Debtor to be able to pay the debts, as described during 2004, based upon the income that he reflected in Schedule I of his bankruptcy schedules. The Debtor also conceded that at approximately the time he filed his Chapter 7 petition, he had remarried and vacationed in Hawaii for his honeymoon. The Debtor noted that he obtained a package deal to marry in Hawaii and that his new wife's parents were able to pay a portion of the costs. However, the Debtor also conceded that he purchased a $4,000 wedding ring. Based upon the foregoing, the Court concludes that the Debtor was not credible as to the income and expenses that he incurred in 2004, and he was not truthful on his Schedule I and J filed with the Court as to his monthly income and expenses. [8] The Debtor was also not complete as to the earnings that he received in

---

**5.** The Debtor never provided the Court with any information as to his earnings as a driver for Safeway. Thus, the Court concludes that the Debtor's testimony as to his earnings for 2005 were substantially under reported by him.

**6.** *See* Exhibit 5. He stated that he had borrowed $1,000 from his brother to pay said obligation, but he did not have any evidence to reflect said obligation at the time of the trial.

**7.** *See* Exhibit 3.

**8.** The Court will refer this matter to the United States Trustee and the Chapter 7 Trustee so that they may determine what additional action they may wish to take in this matter.

4

2005, since he was earning a fairly substantial income from real estate commissions, as well as wages from his employ as a driver at Safeway.

The Debtor's new wife earns $52,000 per year in gross wages as a property manager. Thus, the Debtor and his current wife earn a minimum amount of approximately $82,000 per year in gross wages. The Debtor identified their joint expenses as $1,015 per month for rent, $250 to $300 per month for electricity, $100 per month in water expenses, $350 per month for a car payment, $124 per month in insurance, $702 per month in child support, with food, clothing, and laundry as being other expenses to be paid, but not quantified by the Debtor as to amount.

For the Plaintiff to succeed on her claim under Section 523(a)(15), she has the prima facie burden of showing that the particular obligation to be excepted from discharge is not in the nature of support and arises from the Divorce Decree or other order of a court of record, incurred in the course of a divorce or separation.[9] Jodoin v. Samayoa (In re Jodoin), 209 B.R. 132, 141 (9th Cir. BAP 1997). Based upon a review of Exhibit 7, the State Court Minute Entry, the Court concludes that the debt obligation in the amount of $4,374.61 has two components: the

---

**9.** 11 U.S.C § 523(a)(15)(West 2005) provides:

A discharge ... does not discharge an individual debtor from any debt--

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> 
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor

5

1  payment of a creditor for services rendered or goods provided, and the payment of an
2  unreimbursed medical/dental obligation.  Given the evidence presented, the Court concludes that
3  these obligations are not in the nature of support and were provided for in a minute entry order of
4  the State Court in the domestic relations proceedings between the parties.  The next step requires
5  that this Court review the current and prospective financial pictures of the parties.  Does the
6  Debtor have the ability to pay the obligation to the Plaintiff?  In the disjunctive, the Court may
7  also consider the benefit to be received by the Debtor if the debt is discharged and whether it
8  outweighs the detrimental consequences to the former spouse and any dependents of the parties.
9  This is a balancing of the relative hardship to the Plaintiff if the debt is discharged versus the
10 benefit to the Debtor if the debt is discharged.  In re Myrvang, 232 F.3d 1116 (9th Cir. 2000); In
11 re Jodoin, 209 B.R. 132, 141 (9th Cir. BAP 1997).  Once the Plaintiff has met her burden of
12 going forward to reflect that the debt is set forth in the Divorce Decree or other order of a court
13 of record and is not in the nature of support, the Debtor carries the burden of persuasion on the
14 issue of relative hardship.  In re Fellner, 256 B.R. 898 (8th Cir. BAP 2001); In re Konick, 236
15 B.R. 524 (1st Cir. BAP 1999).

Based upon the evidence presented, the Court concludes that the Plaintiff has met her burden of going forward, and the Debtor has not carried his burden of proof on the issue of the ability to pay or the relative hardship to the parties.  The Debtor is in a far superior financial position to the Plaintiff, and, but for his current lifestyle, would be able to repay the Plaintiff over a relatively short period of time.  Thus, the Debtor has failed to show the Court that he does not have the ability to repay the obligation.  As to the balancing of the benefit to the Debtor versus the detriment to the former spouse and any dependents of the parties, the evidence reflects that the Debtor was not candid with the Court as to his earnings in 2004 and 2005.  The Debtor has also shown the ability to earn a substantial amount in commissions or earnings in the future.  The Debtor also has the ability to pay his current obligations, and the obligation owing to the Plaintiff with relative ease.  In turn, the Plaintiff and her current husband are having difficulty

6

meeting their expenses as they come due. The Plaintiff has also been unable to pay any of the obligation due and owing to her attorney which resulted from the contempt proceedings commenced against the Debtor in the State Court. In balancing the relative hardship between the parties, it is clear to this Court that the detrimental impact on the Plaintiff far outweighs any benefit that the Debtor might receive from a discharge of the Plaintiff's obligation.

The Debtor shall repay the obligation due and owing to the Plaintiff in the amount of $4,374.61, plus costs and interest accruing thereon, as a nondischargeable debt pursuant to Section 523(a)(15) of the Bankruptcy Code. The Court has insufficient evidence to make a determination as to whether the attorneys' fees and costs incurred by the Plaintiff in the State Court proceeding are also nondischargeable.

The Court shall executed a separate order incorporating this Memorandum Decision.

DATED this 23rd day of January, 2006.

*[signature]*

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

BNC to Notice

Other than the interested parties and their counsel, BNC shall ensure that the United States Trustee and the Chapter 7 Trustee obtain a copy of this Opinion.

7